## MISSOURI-KANSAS-TEXAS RY. CO. OF TEXAS v. WELLS et al. (No. 3086.)*

(Court of Civil Appeals of Texas. Texarkana. June 9, 1925. Rehearing Denied June 18, 1925.)

1. Railroads 144(1)—Damages for allowing Johnson grass seed to spread on land adjoining right of way are "damages sustained in operation of railroad" within statute as to liabilities of railroad purchasing another; "operation."

Damages arising from violation of Vernon's Sayles' Ann. Civ. St. 1914, arts. 6601, 6602, making railroad liable for damages and penalty for allowing Johnson grass seed to spread from right of way to adjoining land, are "damages sustained in operation of railroad" within articles 6624, 6625, making company purchasing and taking over franchises of another company liable for all subsisting "damages to property sustained in operation of railroad" since maintenance of right of way is part of operation of railroad; "operation" meaning a course of action or series of acts by which some result is accomplished.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series. Operation.]

2. Railroads 144(2)—Burden held on railroad purchasing another road to adduce testimony to enable jury to separate damages in allowing Johnson grass seed to spread.

If railroad's contention, that it was not liable for damages in allowing Johnson grass seed to spread from right of way before it purchased another railroad, was correct, burden was on purchasing railroad in action against it for damages for allowing such seed to spread both before and after it purchased the other railroad, to adduce testimony which would enable jury to separate damages.

---

3. Trial ⊙⟶350(3)—Evidence held sufficient to submit question of amount of damages caused by allowing Johnson grass seed to spread.

Where evidence showed that all Johnson grass, except a few small patches, was growing on land next to right of way, jury would be justified in concluding that practically all seed was carried from right of way, and it was not error to submit issue as to amount of damages caused from allowing seeds to spread from right of way, over objection that evidence did not show with sufficient certainty whether seeds were carried from other farms or from right of way.

4. Damages ⊙⟶174(3)—Evidence of value of land, before and after Johnson grass seed was spread thereon, held admissible.

In action against railroad for allowing Johnson grass seed to spread to adjoining land, admission of evidence as to value of land, before and after seed was spread on it in 1923, is not subject to objection that proof showed that seed was not all carried thereon in 1923, or that question was not proper one, nor confined to conditions in case.

5. Evidence ⊙⟶543½—Opinion as to value of land, after Johnson grass was allowed to spread to it, held admissible over objection that witness did not know condition of land.

In action against railroad for damages for allowing Johnson grass seed to spread to adjoining land in 1922 and 1923, where witness testified that he was acquainted with land in question and its value, but did not know whether land was infested with Johnson grass in 1922 and 1923, his testimony, that land was worth less after seed was carried on it in 1922, and 1923, is admissible over objection that witness did not know condition of land with reference to Johnson grass in those years, since testimony merely was as to value of land, if not infested with such grass, and its value if it was so infested.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Action by T. P. Wells and another against the Missouri-Kansas-Texas Railway Company of Texas. Judgment for plaintiffs, and defendant appeals. Affirmed.

This suit by appellees against appellant was to recover $25 as a penalty and $1,080 as damages the former claimed to be entitled to because of the violation, it was alleged, of articles in Vernon's Statutes as follows:

"Art. 6601. It shall be unlawful for any railroad or railway company or corporation during business in this state to permit any Johnson grass or Russian thistle to mature or go to seed upon any right of way owned, leased or controlled by such railroad or railway company or corporation in this state.

"Art. 6602. If it shall appear upon the suit of any person owning, leasing or controlling land contiguous to the right of way of any such railroad or railway company or corporation that said railroad or railway company or corporation has permitted any Johnson grass or Russian thistle to mature or go to seed upon their right of way, such person so suing shall recover from such railroad or railway company or corporation the sum of twenty-five dollars, and any such additional sum as he may have been damaged by reason of such railroad or railway company or corporation permitting Johnson grass or Russian thistle to mature or go to seed upon their right of way; provided, any owner of land, or any person controlling land, contiguous to the right of way of any such railroad or railway company, who permits any Johnson grass or Russian thistle to mature or go to seed upon said land, shall have no right to recover from such railroad or railway company as provided for in this article."

In their petition appellees alleged that the statute was violated during the year 1922 and until January 18, 1923, by C. E. Schaff, who, as receiver, was operating the line of railway, which then belonged to the Missouri, Kansas & Texas Railway Company of Texas, and that same was violated by appellant during said year 1923 after said January 18, 1923, when it became the owner of said line of railway. At the trial, the parties agreed that said Schaff, as receiver, had charge of the properties of said Missouri, Kansas & Texas Railway Company of Texas and operated its line of railway as charged. They agreed, further, that the appellant company, a new company, was—

"organized and chartered by the state of Texas, in accordance with the provisions of chapter 11, tit. 115, art. 6625, Revised Statutes of Texas, to which said new company all of said properties and lines of railway of the Missouri, Kansas & Texas Railway Company of Texas were on February 23, 1923, duly conveyed and delivered and said new company has since February 23, 1923, been and is now operating said lines of railway in Texas, one of which lines is the one which runs from Denison through Bells, Texas, to Dallas, and its right of way is contiguous to the land alleged in the petition of plaintiffs to belong to them and to have been damaged by Johnson grass."

It appeared in the testimony that the line of railway specified ran north and south. It appeared further that the east boundary line of appellees' tract of land was the west boundary line of the railway right of way a distance of 1,650 yards, and that the south boundary line of the land was the north boundary line of a public road a distance of 800 yards. It appeared further that during the years 1922 and 1923 Johnson grass was permitted to mature seed on the railway right of way, on the Carter farm east of and adjoining the right of way, on the public road and on the Andrews farm south of and adjoining the public road. There was testimony that during the years mentioned portions of appellees' land never before so infested became infested with Johnson grass, and that 90 per cent. of such infestation was along the railway right of way and within a

distance of not exceeding 150 yards from same.

Special issues were submitted to the jury, and they found as follows:

(1) During the year 1922 seed from Johnson grass said Schaff had permitted to mature on the right of way of said Missouri, Kansas & Texas Railway Company of Texas contiguous to appellees' land was carried from said right of way to appellees' land and caused Johnson grass to grow thereon, and during the year 1923 seed from Johnson grass appellant permitted to mature on said right of way were carried therefrom to appellees land and caused Johnson grass to grow thereon.

(2) Appellees' land was damaged by Johnson grass from seed so carried thereto during the year 1922 in the sum of $200, and by grass from seed so carried thereto in 1923 in the sum of $450.

(3) Appellees did not permit Johnson grass growing on their land to mature seed during said year 1923.

The appeal is from a judgment in appellees' favor against appellant for $675—the amount of the damages found by the jury and the penalty provided for by the statute.

Chas. C. Huff and A. H. McKnight, both of Dallas, and Head, Dillard, Smith, Maxey & Head, of Sherman, for appellant.

Webb & Webb, of Sherman, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] Appellant's contention, that it was not liable in any event for damage to appellees' land, caused by seed carried thereto from Johnson grass on the right of way during the year 1922, is on the theory that its agreement in conformity to the requirement of articles 6624 and 6625, Vernon's Statutes, to take and hold the property and franchises of the Missouri, Kansas & Texas Railway Company of Texas subject to the payment of subsisting liabilities and claims "for loss of and damage to property sustained in the operation of the railroad by the company or by any receiver thereof," did not include damage arising from a violation of articles 6601 and 6602, Vernon's Statutes, set out in the statement above. The argument is that such damage was not "damage sustained in the operation of the railroad" within the meaning of said articles 6624 and 6625. One of the meanings of the word "operation," according to the Century Dictionary, is "the course of action or series of acts by which some result is accomplished." We think it should be held that the word was used in that sense in the statute. The result to be accomplished by the operation of a railroad is the moving of trains carrying persons and things from one point to another. Trains cannot move until a way for them to pass over is provided, and they

cannot continue to move unless the way provided is maintained. Therefore, we think, the maintenance of the way in conformity to the requirements of the law enters into and is a part of the "operation" of a railroad. That the Supreme Court of Kansas entertained a like view of the matter is indicated by their statement as follows in Railway Co. v. Merrill, 40 Kan. 404, 19 P. 793:

"The roadway and track of the company are as essential to the operation of the railroad as the locomotives or the other equipment. * * * In our opinion the care and maintenance of the roadway and track is fairly included as a part of the operation of a railroad."

[2, 3] If the contention just discussed is not tenable, as we think, the court below did not err when he refused appellants special charge No. 3, that the burden was on appellees to adduce testimony which would enable the jury to separate the damage to the land in 1922 from the damage thereto in 1923 by seed carried thereto from the right of way. If appellant was liable for the damage so caused to appellees in 1922 as well as 1923, it did not devolve on appellees to show what part of the damage they suffered arose from a violation of the law in 1922 and what part arose from a violation thereof in 1923.

The trial court propounded questions as follows to the jury:

"(3) What amount of damage, if any, was caused to plaintiffs' land by Johnson grass being caused to grow thereon, if it was, from seed which matured on the right of way of the M. K. & T. Ry. Company of Texas during the year 1922?

"(4) What amount of damage, if any, was caused to plaintiffs' land by Johnson grass being caused to grow thereon, if it was, from seed which matured on the right of way of the defendant, the Missouri-Kansas-Texas Railroad Company of Texas, if any, during the year 1923."

The questions were objected to on grounds stated in appellants' brief as follows:

"Because there is no evidence of any damage, and the evidence is insufficient to warrant the submission of damages, or to show with any certainty what damage, if any, was done plaintiffs' land by Johnson grass being caused to grow thereon from the seed which matured on the right of way in 1922, and no evidence to show with sufficient certainty the damage, if any, that was done to plaintiffs' land by Johnson grass being caused to grow thereon from seed which matured on the right of way of the defendant during the year 1923, and any attempt of the jury, under the evidence, to fix such damages would be mere speculation."

The objection plainly was not tenable so far as it was based on the claim that there was no evidence showing damage to appellees' land, and as plainly the objection should

have been overruled so far as it was based on the claim that the evidence did not show with certainty the damage to the land in 1922 as distinguished from that it sustained in 1923, and vice versa, if the conclusion reached by us that appellant was liable to appellees for damage to their land for 1922 as well as 1923, resulting from seed carried thereto from the right of way, is correct. The remaining ground of the objection, to wit, that the testimony as to the damage to the land did not warrant the submission to the jury of a question as to the amount of the damages suffered by appellees, seems to be based on testimony which would have authorized a finding that seed were carried to the land from the Andrews and Carter farms as well as from appellant's right of way, and the difficulty, if not impossibility, of distinguishing with certainty between damage for which appellant was liable and damage for which it was not liable. There was testimony showing (the jury had a right to say) that all the Johnson grass on appellees' land, except a few small patches which could have been destroyed at a cost of about $40, was on the part thereof next to the right of way. That fact, we think, authorized the jury, reasoning as to the "preponderance of probabilities" (Conner v. State, 34 Tex. 659; 23 C. J. 18), to conclude that practically all the seed propagated on appellees' land in 1922 and 1923 were carried there from grass on the right of way. If they might have done that, then plainly it was not error to submit the questions complained of to the jury over appellant's objection thereto on the ground in question. The uncertainty as to the amount of damage to the land from seed from the right of way arose from a situation for which appellees were not responsible, and which appellant might have avoided by complying with the law.

[4] It appears from a bill of exceptions in the record that after appellees' witness C. L. Wells had testified that he "knew the market value of farms in the community of plaintiffs' land, and knew same in the year 1923 and this year," appellees asked him this question:

"What is the value of the farm as it is now, with the seed that got on it in 1923?"

It appears from the bill, further, that the court permitted the witness to answer—

"that the value of the land as it is now, with the seed that got on it in 1923, is $100 an acre, and that it would be worth now, if that Johnson grass had not gotten on there in 1923, $115, an acre."

The ground of the objection to the testimony was that—

"The proof showed that the grass on the farm, if it was carried there from the railway right of way, was not all carried there in 1923, and that the question was not a proper one and confined to the conditions involved in this suit."

We do not think the court erred when he refused to exclude the testimony on the objection urged to it. It may be it should have been excluded had the objection been on the ground that it did not appear that the witness knew, or could have known, to what extent the value of the land was affected by seed carried thereto from the right of way in 1923 as distinguished from the damage to it from seed carried to it at other times and from other places.

[5] After he had testified that he was acquainted with appellees' land and the market value of lands in the neighborhood in which it was situated, and, further, that he did not know whether appellees' land was infested with Johnson grass in 1922 and 1923 or not, the witness King, over appellant's objection, was permitted to testify that in his opinion appellees' land was worth $100 an acre in June, 1922, and $10 or $15 an acre less afterward, if seed were carried to it from the right of way in 1922 and in 1923. The ground of the objection was that it appeared the witness did not know the condition of the land with reference to Johnson grass in either 1922 or 1923. While it appeared from other testimony that parts of appellees' land were infested with Johnson grass prior to 1922, it also appeared that the opinion of the witness as to value of the land in June, 1922, was on the assumption by him that same was not then infested with such grass. It reasonably appears, we think, that the testimony of the witness, in effect, was merely as to the value of the land if not infested with Johnson grass and its value if infested with such grass, and that the jury so understood it. If that was the effect of the testimony, we think the trial court did not err when he overruled the objection urged to it.

What has been said with reference to appellant's complaint about the testimony of the witness King applies as well to its complaint about testimony of the witnesses Gordon, Myrick, and Sears admitted over its objection.

We think error requiring a reversal of the judgment has not been shown. Therefore it is affirmed.